T.C. Memo. 2015-49

UNITED STATES TAX COURT

YIGAL ELBAZ AND BONNIE ELBAZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24093-12.                     Filed March 17, 2015.

<u>Zack Kuperwaser</u>, for petitioners.

<u>Diana P. Hinton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined the following deficiencies and
accuracy-related penalties with respect to petitioners' Federal income tax for
taxable years 2007 and 2008:

| [*2]<br>Year | Deficiency | Penalty<br>sec. 6662(a) |
|---|---|---|
| 2007 | $1,318 | $264 |
| 2008 | 19,268 | 3,854 |

After concessions,[1] the sole issue for decision is whether $54,507 petitioners received in 2008 from a refund of State income tax is taxable income. We hold that it is.[2]

## FINDINGS OF FACT

Petitioners resided in Hewlett, New York, when they filed the petition in this case.

A.    Qualified Empire Zone Enterprise Credit (QEZE)

The State of New York provides tax benefits to businesses that invest in certain designated areas of the State.  One of these benefits is the Qualified Empire Zone Enterprise credit for real property taxes (QEZE real property tax credit).  The QEZE real property tax credit is provided to businesses that qualify as a Qualified

---

[1]Petitioners concede the $1,318 deficiency and $264 accuracy-related penalty for tax year 2007.  We have rounded monetary amounts to the nearest dollar.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.

[2]Petitioners concede that if the Court holds that the $54,507 New York State overpayment is includable in their Federal taxable income, then they are liable for the accuracy-related penalty.

**[*3]** Empire Zone Enterprise (QEZE) for taxes paid on real property in an Empire Zone. See N.Y. Tax Law sec. 15 (McKinney 2014 & Supp. 2015). A business must submit an application in order to become a QEZE. A business may become eligible to claim various targeted tax credits if its application is accepted, it operates within a designated area, and it meets certain annual employment requirements. Id. subsecs. (a) and (b).

If a business qualified as a QEZE before April 1, 2005, the amount of the credit equals the product, or pro rata share of the product, of (1) the benefit period factor, (2) the employment increase factor, and (3) the eligible real property taxes paid or incurred by the QEZE during the taxable year. Id. subsec. (b). The income tax credit may not exceed the amount of real property taxes paid. See id. subsecs. (b), (e).

A taxpayer that is a sole proprietor of a QEZE, a shareholder of a New York S corporation that is a QEZE, or a partner in a partnership that is a QEZE is entitled to the credit. Id. subsec. (a); Maines v. Commissioner, 144 T.C. ___, ____ (slip op. at 4) (Mar. 11, 2015). Each shareholder or partner is allocated his or her pro rata share of the entity's QEZE credit. It is creditable against New York income tax and refundable to the extent that it exceeds the taxpayer's income tax liability.

**[*4]** B.  Petitioners' Interest in the Entities

Petitioner Yigal Elbaz (petitioner) holds 50% interests in the following three entities (hereinafter referred to collectively as the entities):  (1) Superflex, Ltd., an S corporation, (2) Superflex Management, LLC, a limited liability company treated as a partnership for Federal income tax purposes, and (3) Superflex Realty, LLC, which is also a limited liability company treated as a partnership for Federal income tax purposes.  On June 6, 1995, New York State provided a Certificate of Eligibility for the QEZE credit to Superflex, Ltd.  On July 31, 2001, New York State provided a Certificate of Eligibility for the QEZE credit to both Superflex Management, LLC, and Superflex Realty, LLC.

Superflex, Ltd., paid New York State property tax of $28,053 in 2007, which it subsequently deducted on its 2007 Form 1120S, U.S. Income Tax Return for an S Corporation.  Superflex Management, LLC, deducted $65,039 on its 2007 Form 1065, U.S. Return of Partnership Income, at least $59,375 of which was property tax paid to the State of New York.  Superflex Realty, LLC, deducted $62,691 on its 2007 Form 1065, at least $42,888 of which was property tax paid to the State of New York.  For 2007 and 2008 petitioners jointly filed Forms 1040, U.S. Individual Income Tax Return.  They also jointly filed Forms IT-201, New York State Resident Income Tax Return, for taxable years 2007 and 2008.

**[*5]** As a 50% shareholder in Superflex, Ltd., and a member with a 50% interest in both Superflex Management, LLC, and Superflex Realty, LLC, petitioner submitted Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc. for 2007. The deduction of real estate taxes by the entities reduced the amount of income that petitioners reported on their 2007 Schedule K-1 (Form 1065).

C.     Petitioners' 2007 Tax Return

On Schedule A, Itemized Deductions, of their 2007 Form 1040, petitioners deducted State and local income taxes of $122,742. On their 2007 Form IT-201 petitioners claimed credits and payments totaling $155,684, which consisted of (1) $54,507, the *pro rata* share of their QEZE refunded credits, (2) $52,017 of New York State withholding tax, and (3) $49,160 of estimated tax payments. The QEZE credit of $54,507 derives from petitioner's ownership interests in Superflex, Ltd., Superflex Management, LLC, and Superflex Realty, LLC. The amounts of income petitioners reported from each are as follows: $3,375 from Superflex, Ltd., $29,688 from Superflex Management, LLC, and $21,444 from Superflex Realty, LLC.

For 2007 petitioners owed New York State tax of $92,076. Petitioners claimed an overpayment of $63,608. This amount is the difference between

[*6] (1) the payments totaling $155,684, which consisted of (a) petitioners' *pro rata* share of their QEZE refunded credits, (b) their New York State withholding tax, and (c) their estimated payments, and (2) petitioners' New York State tax owed totaling $92,076.  On their 2007 Form IT-201 petitioners applied this overpayment to their 2008 estimated tax.

D.    Petitioners' 2008 Tax Return

On Schedule A of their 2008 Form 1040 petitioners deducted State and local income taxes of $93,635.  Of that amount, $63,608 is attributable to the overpayment petitioners claimed for 2007, which includes the $54,507 of QEZE credits petitioners received as a result of petitioner's interests in the entities.  In 2008 the State of New York issued a Form 1099-G, Statement for Recipients of State Income Tax Refunds, to petitioners for tax year 2007 reporting the payment of $9,101.  Petitioners reported this amount as income received on their Form 1040.  Petitioners did not report as income the remaining $54,507, which consisted of the QEZE refunded credits.

OPINION

The issue for decision is whether $54,507 petitioners received as a refund of State income tax is taxable income for 2008.

**[*7]** A.   <u>State Tax Deductions and the Tax Benefit Rule</u>

   1. <u>State Tax Deductions</u>

   A taxpayer may deduct certain taxes paid or accrued during the taxable year, including income, real property, and personal property taxes imposed by local, State, and foreign governments.  Sec. 164(a).  A taxpayer who itemizes his or her deductions must include State income tax refunds in income for the year received if the taxpayer deducted State income tax payments made in the preceding year. <u>Maines v. Commissioner</u>, 144 T.C. at ___ (slip op. at 12).  State tax refunds, however, are not income unless the taxpayer deducted them for the previous year. <u>See</u> <u>id.</u> at ___ (slip op. at 13) (citing <u>Tempel v. Commissioner</u>, 136 T.C. 341, 351 n.19 (2011), <u>aff'd sub nom.</u> <u>Esgar Corp. v. Commissioner</u>, 744 F.3d 648 (10th Cir. 2014).

   2. <u>Tax Benefit Rule</u>

   The tax benefit rule eliminates some of the inequities that would otherwise result from the annual accounting system used for Federal income tax.  <u>See</u> <u>Hillsboro Nat'l Bank v. Commissioner</u>, 460 U.S. 370, 377 (1983).  An item is excluded from income if inclusion would be fundamentally inconsistent with the taxpayer's treatment of the item for the prior tax year.  <u>Id.</u> at 383-384; <u>Maines v. Commissioner</u>, 144 T.C. at ___ (slip op. at 11-12).  Generally, under section

[*8] 111(a), if a taxpayer deducted a tax on a prior year's return that resulted in a tax benefit, the taxpayer's subsequent recovery of the tax is included in gross income for the year in which the taxpayer receives it. Kadunc v. Commissioner, T.C. Memo. 1992-61, aff'd without published opinion, 981 F.2d 1251 (4th Cir. 1992).

B. Petitioners' Arguments

1. Chief Counsel Advice 200842002

Petitioners rely on IRS Chief Counsel Advice 200842002. However, a "written determination" of the Commissioner may not be used or cited as precedent, sec. 6110(k)(3), and written determinations are defined to include Chief Counsel advice, sec. 6110(b)(1)(A); see also Ellison v. Commissioner, T.C. Memo. 2004-57, slip op. at 18 ("Parties are statutorily proscribed from citing chief counsel advice as precedent."). Thus, we may not use or cite as precedent IRS Chief Counsel Advice 200842002 in deciding this case.

2. Nature of the QEZE Credit

Petitioners point out that they did not deduct New York State real property taxes for 2007 on their Form 1040; that is, the entities that paid the real property taxes in 2007 deducted these taxes on their Federal returns. Petitioners argue that because the entities, not petitioners, deducted the real property taxes, petitioners

[*9] received no Federal income tax benefit from the New York State real property taxes paid.

Petitioners' QEZE credit was based on the real property taxes the entities paid. In Maines, as here, the property tax was paid and deducted at the entity level, which led to decreased income that was passed through to the taxpayers, and which led to decreased tax liability. Maines v. Commissioner, 144 T.C. at ___ (slip op. at 27). The decreased tax liability is a benefit, and receiving an untaxed cash refund of the previously deducted taxes would be fundamentally inconsistent with the previous treatment to the extent the taxpayer benefited from the decreased passthrough income. Id. The tax benefit rule applies whether or not the taxpayer personally claimed the earlier deduction if the taxpayer's tax-free receipt of the QEZE credit is fundamentally inconsistent with the earlier tax treatment. Id.

C.    Conclusion

Though the entities deducted the real property taxes, petitioners calculated their proportionate share of the entities' net real estate income on their Schedule K-1. The entities' deduction of real property taxes led to a lower amount of income reported on petitioners' Schedule K-1. This lower amount of income petitioners reported resulted in reduced tax liability for 2007, which is a benefit to petitioners. The receipt of a refund of this previously deducted tax is

**[*10]** fundamentally inconsistent with the previous treatment to the extent petitioners benefited from the decreased passthrough income.  Thus, we conclude that the $54,507 petitioners received in 2008 from a refund of State income tax is taxable income.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.